UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) Case No. 3:12-CR-067 JD |
| | ) |
| OMAR DURAN LAGUNES (01) | ) |
| MARGARITO FUENTES REYES (02) | ) |
| RAUL RAFAEL ROMAN CAMACHO (03) | ) |
| LUIS OMAR MONTES MERINO (04) | ) |
| YALITZA EXCLUSA BORRERO (05) | ) |
| EVELYN RIVIERA BORRERO (06) | ) |

## Opinion and Order

Pending before the Court is a motion by Raul Rafael Roman Camacho—now also joined by his co-defendants—to dismiss the indictment in this case. *See* DE 102. The issue is fully briefed and ripe for adjudication. *See* DE 109, DE 115. For the following reasons, the Court denies the motion to dismiss.

## Background

On June 14, 2012, a grand jury returned a two-count indictment against the six defendants in this case. *See* DE 1. Both counts of the indictment allege a conspiracy to commit substantive offenses. Count 1 alleges that the defendants knowingly and intentionally conspired to commit substantive immigration offenses in violation of 8 U.S.C. § 1324(a)(1)(A)(v)(I)—specifically, that they conspired to "encourage and induce aliens to come to, enter, and reside in the United States, knowing and in reckless disregard of the fact that such coming to, entry, and residence was and would be in violation of law," in violation of 8 U.S.C. § 1324(a)(1)(A)(iv), and "to conceal, harbor, or shield aliens from detection knowing and in reckless disregard of the fact that an alien had come to, entered, or remained in the United States in violation of law," in violation of 8 U.S.C. § 1324(a)(1)(A)(iii); it is alleged that both

objectives were done "for private gain and commercial advantage," subjecting the defendants to enhanced penalties under 8 U.S.C. § 1324(a)(1)(B)(i). Count 2 alleges that the defendants knowingly and intentionally conspired to commit mail fraud, in violation of 18 U.S.C. § 1349, specifically to commit the offense of mail fraud in furtherance of the conspiracy described in Count 1, in violation of 18 U.S.C. § 1341.

The narrative accompanying Count 1 sets out in rich detail both some of the means by which the conspiracy violated the underlying laws and some of the overt acts that members of the conspiracy undertook in furtherance of its objectives. Before the Indiana Bureau of Motor Vehicles (BMV) will issue a vehicle registration, license plate, or title to an individual, the BMV verifies the individual's social security number, name, and date of birth. As a consequence, undocumented aliens without valid social security numbers cannot obtain registrations, license plates, or titles for their vehicles. The defendants, under the direction of Omar Duran Lagunes, operated a business at several locations throughout the State of Indiana—primarily in the Southern District of Indiana but also at locations in the Northern District—that helped undocumented aliens obtain these items, notwithstanding the obstacles erected by the BMV.

This was accomplished by exploiting a loophole in the BMV regulations: although individuals cannot register, title, or plate their vehicles without valid social security numbers, corporations and limited liability companies (which do not have social security numbers) need only Employer Identification Numbers from the Internal Revenue Service. The defendants therefore helped undocumented aliens circumvent the BMV's social security number requirement by creating individual LLC's in the aliens' names, registering the LLC's with the Indiana Secretary of State, obtaining Employer Identification Numbers from the IRS, and then obtaining registrations, license plates, and titles for the vehicles from the BMV in the name of

2

the LLC. Along the way, the defendants allegedly counseled their customers to evade taxes by reporting false values for their vehicles, and in some cases, at least, falsely notarized documents that were submitted to the BMV. Many of the official transactions in this case were made via United States mail.

## Analysis

"An indictment is legally sufficient if it (1) states all the elements of the crime charged; (2) adequately informs the defendant of the nature of the charges so that he may prepare a defense; and (3) allows the defendant to plead the judgment as a bar to any future prosecutions." *United States v. White*, 610 F.3d 956, 958 (7th Cir. 2010) (*citing* See Fed.R.Crim.P. 7(c)(1); *United States v. Smith*, 230 F.3d 300, 305 (7th Cir. 2000)). While in many cases, an indictment need do little more than track the words of a statute, in other cases additional detail will be necessary to inform a defendant of the "gravamen of the alleged offense." *See United States v. Hinkle*, 637 F.2d 1154, 1157–58 (7th Cir. 1981) (holding an indictment insufficient where it charged defendant with using a telephone to facilitate in some manner one of several unspecified acts with some unspecified controlled substances). An indictment need not, however, detail the government's evidence or identify all the facts supporting the allegations. *See United States v. Resendiz-Ponce*, 549 U.S. 102, 110 (2007).

To prove its conspiracy charge, the Government must show (1) an agreement to accomplish an illegal objective; (2) one or more overt acts in furtherance of this purpose; and (3) an intent to commit one or both of the substantive offenses." *United States v. Cueto*, 151 F.2d 620, 623 (7th Cir. 1998). To convict each defendant, the Government will need to prove that not only did the conspiracy alleged exist, but that the defendant knew of the conspiracy and intended to join and further the conspiracy's aims. *See United States v. Hunt*, 272 F.3d 488, 495 (7th Cir.

3

2001).

The indictment in this case is clearly sufficient because it alleges the elements laid out above and provides ample detail to inform the defendants of the gravamen of the charges. Count 1 alleges an agreement between the defendants (and perhaps others) to accomplish two illegal objectives—"to encourage and induce aliens to come to, enter, and reside in the United States," in violation of § 1324(a)(1)(A)(iv), and "to conceal, harbor, or shield aliens from detection," in violation of § 1324(a)(1)(A)(iii), both "for private gain and commercial advantage" and therefore subject to enhanced penalties under § 1324(a)(1)(B)(i).[1] The indictment also alleges the defendants' state of mind: they conspired "knowingly and intentionally" and the conspiracy sought its objective "knowing and in reckless disregard of the fact that" the aliens were in the United States in violation of law. The indictment then provides significant detail regarding the principal (though not necessarily exclusive) *means* by which the conspiracy pursued its illegal objective and some of the significant *overt acts* that members of the conspiracy undertook in furtherance of the illegal objective. Likewise, Count 2 sets out the illegal objective (mail fraud in furtherance of the conspiracy alleged in Count 1, in violation of 18 U.S.C. § 1341), the required state of mind (knowingly and intentionally), and some of the overt acts in furtherance of the mail fraud conspiracy (cross referencing the detailed allegations of Count 1). These allegations are more than sufficient to sustain the indictment, and thus the motion must be denied.

---

[1] Mr. Roman-Camacho characterizes Count 1 as charging him with two separate crimes—§ 1342(a)(1)(A)(iii) and § 1324(a)(1)(A)(iv). If that characterization were accurate, it would make the indictment unlawfully duplicitous. As the government points out, however, it is well established that it is not duplicitous to charge the defendants with a *single* conspiracy with *multiple* illegal objectives. *See Braverman v. United States,* 317 U.S. 49, 54 (1942) ("The single agreement is the prohibited conspiracy, and however diverse its objects it violates but a single statute."); *United States v. Vallone*, 698 F.3d 416, 461 (7th Cir. 2012) ("A duplicitous charge is not one that simply alleges a single offense committed by multiple means, but rather one that joins two or more distinct crimes in a single count.").

What Mr. Roman-Camacho appears to argue, however, is not so much that the indictment is insufficient on its face but rather that the Government could not possibly produce evidence at trial that would allow a jury to convict him, or the other defendants, of the crimes alleged. This is because, he argues, the means identified in the indictment—assisting undocumented aliens to exploit a loophole in BMV regulations and obtain vehicle registrations that they could not otherwise get due to their immigration status—cannot, under any circumstances, constitute encouraging or inducing, or concealing, harboring, or shielding. "[W]hen evaluating the sufficiency of an indictment, we focus on its allegations, which we accept as true. Challenging an indictment is not a means of testing the strength or weakness of the government's case, or the sufficiency of the government's evidence." *United States v. Moore*, 563 F.3d 583, 586 (7th Cir. 2009). Rather, the narrow question before the Court is "whether it's *possible* to view the conduct alleged as an agreement" to conceal, harbor, or shield, and induce or encourage undocumented aliens. *Id. (*emphasis added).

In this case, it is indeed possible to view the alleged conduct as an agreement to violate 8 U.S.C. § 1324(a)(1)(A)(iii) and (iv) and an agreement to commit mail fraud in violation of 18 U.S.C. § 1341. Regarding the immigration offenses, the government has alleged that the object of the conspiracy was to "conceal, harbor, and shield from detection aliens who are present in and remain in the United States in violation of the immigration laws " and to "encourage and induce aliens to come to, enter, and reside in the United States," by giving false information and documents regarding the identity of the owners of motor vehicles to the BMV and the Secretary of State, and that this was all done for financial gain. It is alleged that they did so primarily (though not necessarily exclusively) by assisting aliens to obtain vehicle registrations, license plates, and titles, notwithstanding BMV policies designed to prevent individuals without social

5

security numbers from obtaining these items.

The alleged objectives are clearly prohibited by the statute, so this is not a case like *United States v. Enmons*, 410 U.S. 396 (1973) in which the objective alleged—in that case, forcing a favorable labor agreement—falls outside the scope of the statute. And at this juncture, the Court must assume that the government will prove that the defendants agreed to pursue the illegal objectives alleged in the indictment.[2] Further, the government correctly notes that the actions alleged need not necessarily themselves constitute the substantive immigration crimes because "[t]he crime of conspiracy is the agreement itself." *United States v. Corson*, 579 F.3d 804, 810 (7th Cir. 2009). The only question is whether it is possible to view the types of means and actions alleged as overt acts in furtherance of those agreed illegal objectives. Whether the alleged scheme made the conspiracy's customers less (or more, as Mr. Roman-Camacho claims) likely to be detected as undocumented aliens, or whether the services the defendants provided encouraged or induced aliens to reside in the United States, are questions of fact that can not be decided without a trial. The Court is satisfied that it is not inconceivable that the government could prove that the alleged actions could have furthered an agreement to pursue the objectives of concealing, harboring, and shielding aliens from detection and inducing or encouraging them to reside in the United States. *See United States v. Ye*, 588 F.3d 411, 415 (7th Cir. 2009) (approving jury instruction defining "shielding" as "the use of any means to prevent the detection of illegal aliens in the United States by the Government"); *United States v. Shum*, 496 F.3d 390, 392 (5th Cir. 2007) (holding that providing false identification and failing to file social

---

[2]Thus, the Court does not decide, in this order, whether evidence that the defendants agreed solely to engage in the means and actions alleged would, *standing alone*, be sufficient to prove an agreement to pursue the alleged illegal objectives. That is a question more properly addressed in a motion under Rule 29 after the government has presented its evidence because it is quite possible that the government will produce evidence showing that the defendants assisted the aliens in other ways.

security paperwork were "steps that would shield [aliens] identities from detection" and make it "easier for aliens to remain in the United States illegally); *United States v. Ndiaye*, 434 F.3d 1270, 1296 (11th Cir. 2006) (defendants "encourage or induced" one alien to reside in the United States by helping fraudulently obtain a social security number that he was not entitled to have); *United States v. Oloyede*, 982 F.2d 133 (4th Cir. 1992) (upholding conviction for selling false citizenship papers:"While offering [aliens] a chance to stand equally with all other American citizens, defendants encouraged them to continue to reside here"). Thus, it is indeed possible to view the conduct alleged in the complaint as an agreement to accomplish the illegal objectives charged.

Mr. Roman-Camacho's argument draws heavily on the recent Seventh Circuit decision in *United States v. Costello*, 666 F.3d 1040 (7th Cir. 2012), which overturned a conviction under the harboring prong of § 1324(a)(1)(A)(iii) where the defendant did nothing more than provide a place for her boyfriend, whom she knew was in the country illegally, to stay. *Costello* is undoubtedly an important precedent for this case, and does indeed try to place limits on the conduct that the government may reach under the statute in question. But a brief look at *Costello* also reveals why dismissing the case at this stage is inappropriate. There was no question that providing a house for someone known to be an illegal alien *could* constitute the crime of harboring under § 1324(a)(1)(A)(iii), if the intention was to provide a "secure haven, a refuge, a place to stay in which the authorities are unlikely to be seeking him." *Id.* at 1050. Rather, what the court decided there is that simply providing shelter, *without more*, does not violate the statute and that *given the evidence*—or lack thereof—produced at trial, the government had not proved harboring *in that case*. Similarly, the alleged actions in this case *could* have violated the statute, but the Court will not be able to decide whether they actually did until the issue has been tried.

Finally, Mr. Roman-Camacho also seeks to distinguish a long list of authority from other circuits provided by the government in support of its position by arguing that the indictment in this case stretches the statute farther than any of those cases. Again, while those precedents will certainly inform this Court's determination of whether the government has presented sufficient evidence to permit conviction, they certainly weaken Mr. Roman-Camacho's position at this stage because not a single one of those cases was decided on a motion to dismiss the indictment. Indeed, Mr. Roman-Camacho has not provided a single example of a case in which an indictment alleging violations of § 1324(a) was dismissed before trial for exceeding the reach of the statute.[3]

With regard to the mail-fraud conspiracy alleged in Count 2, the analysis is even more straightforward. Mr. Roman-Camacho does not specifically address Count 2, but given his arguments in this motion and elsewhere, the Court surmises that he contends that the alleged scheme was not, in fact, fraudulent and that the use of the United States mail in furtherance of the scheme would not violate 18 U.S.C. § 1341. But whether the underlying scheme in fact defrauded the BMV or the Secretary of State or merely took advantage of a legal loophole, and whether the defendants used the mail in furtherance of their scheme is a question of fact for trial. On the face of the indictment, it is certainly *possible* that the government could prove that the defendants agreed to fraudulently obtain registrations and plates from the BMV and used the

---

[3]Mr. Roman-Camacho also argues, somewhat obscurely, that allowing the government to prosecute the acts alleged in the indictment would raise federal preemption concerns because it would allow the states to interfere with federal immigration policy by determining what privileges are "benefits of citizenship," and that such state decisions would be enforceable under federal law. This argument misses the mark. The government is not prosecuting a violation of BMV regulations in this case, and there is no need for an action to be independently illegal before it can violate the immigration statute in question—there is nothing inherently illegal about providing housing or transportation to one's employees, but such actions can indeed violate § 1324(a) if done for known illegal aliens for the purpose of harboring them or encouraging them to reside illegally in the United States.

mail to do so.

## Conclusion

Accordingly, the Court **DENIES** the Defendant Raul Rafael Roman Camacho's Motion to Dismiss [DE 102].

SO ORDERED.

ENTERED:  December 21, 2012

      /s/ JON E. DEGUILIO
Judge
United States District Court